And good morning, everyone. Those of you who are here with us in the courtroom and those of you who are joining us on Zoom, it's so good to see you here in the courtroom. We're glad you're here, and we're glad that we're finally able to resume in-person oral arguments. Before we begin this morning, I'd like to introduce and present our newest colleague, Candace Jackson Acumi, who was confirmed this summer and is sitting with us for the very first time today. On behalf of Judge Flom and myself and, indeed, all of our colleagues, I would like to extend a warm welcome to Judge Jackson Acumi, and I'd ask you to do the same to her this morning. And we are fortunate, indeed, to have a full complement of judges again on the court and to have a new jurist of such distinguished qualifications and experience joining us. Welcome to you. All right. With that, I'll call our first case, and it is Donald Snowden against Jeremy Henning. Mr. Chung. You may proceed. Good morning, Your Honors, and may it please the court. My name is Eric Chung, and I'm appearing on behalf of Appellant Mr. Donald Snowden. Mr. Snowden's case is identical to Bivens' in every meaningful way. Both cases involve an excessive force claim under the Fourth Amendment against individual line level officers. In fact, the very same kind of line level officer, a federal drug agent, exercising the same legal mandate, the authority to conduct an arrest in the same area of law enforcement, narcotics with the same judicial guidance. How much force is reasonable to effectuate an arrest? The district court ignored all of these similarities and relied instead on immaterial factual differences, such as the number of individual officers involved, to conclude that this case presents a new context and no remedy should be available. What the district court should have done is applied the clear instruction from Bivens and more recently from Abbasi to conclude that this case and the excessive force claim here falls entirely within Bivens, as the Sixth and Ninth Circuits have both held in two post-Abbasi decisions. As long as Bivens remains good law and the Supreme Court has made very clear in Abbasi that it is, then there should be a remedy for Mr. Snowden in this case. Unless your honors have any questions at the outset, I'd like to just walk through a few key points, starting with the continued validity of Bivens. In Abbasi, the Supreme Court recognized that there should be some caution before extending Bivens to new context, but it made very clear that Bivens itself remains good law. It recognized the continued force and necessity of Bivens in this common and recurrent sphere of law enforcement, meaning the type of arrest and the excessive force claim that's at issue here, and it said that it was important to maintain Bivens because it provides guidance and instruction to law enforcement officers, and it also provides some redress for grievances under the Constitution. I think that's clear. Bivens hasn't been overruled. But we need to make sense of the directions that we've been given in Abbasi and more recently in Hernandez about extensions to new contexts. And the circuits have taken different approaches to that inquiry. Some of them are extremely fact-bound, and any minor deviation in the facts is enough to constitute an extension that's prohibited under Abbasi and Hernandez, and then other circuits take a more categorical approach. It strikes me that you're arguing for the more categorical approach. If it's a Fourth Amendment excessive force claim, it's in, it's not an extension, you know, absent some extraordinary factual or major factual distinction, like a cross-border shooting, which was the fact pattern in Hernandez itself. Is that a fair statement of your position? Your Honor, we're not advocating just for a categorical approach where we say any Fourth Amendment and even any Fourth Amendment excessive force claim would necessarily fall under Bivens. We're saying that because of those similarities, but also that's the same type of line-level officer, that's an individual federal drug agent who's exercising the same type of legal mandate and has the same judicial guidance about excessive force claims, that that and all of those similarities together make this case fall under Bivens. So we're not advocating for a larger extension of Bivens, but just meaningful differences have to be the standard because that's what the language in Abbasi said. And the district court didn't apply that meaningful difference analysis here. They identified factual differences that don't go to the actual constitutional violation at issue. It doesn't relate to the excessive force claim and doesn't, at the end of the day, count as meaningful differences. And that's where we think the district court really took off in a way that is not consistent with either Abbasi or Hernandez. We agree that those cases do say that you can't just look at any type of differences, but they have to be meaningful. But what makes a difference meaningful? That is the key question. As I understand the circuit split that exists on how to approach these questions, is the distinction meaningful based on the nature of the constitutional right in question or the constitutional amendment that forms the basis of the claim? Or is it meaningful vis-a-vis the policy underpinnings of Bivens itself or both? We think there is a bit of both in that, Your Honor. In Abbasi, the court identified the two steps, whether this falls under an existing Bivens context and then the special factors counseling hesitation. And underpinning both of those is this idea of separation of powers, ensuring that the courts are not overstepping by recognizing a cause of action where Congress would not have wanted there to be one. And in both of those analyses, the court didn't explicitly say, what's a meaningful difference and how do we define that term? But they provided examples like the rank of the officers involved and the legal mandate that's at issue, the judicial guidance that's available. And it seems quite clear  that could relate to whether ultimately there's any reason to be concerned about recognizing that cause of action. And that's why, as Your Honor pointed out, the constitutional violation is a key part of this because if, for instance, in the type of examples that the court, the district court provided, such as the number of individual officers involved, that doesn't get at the question of why would we recognize a cause of action for excessive force claims? If it's one officer versus six, the whole point of Bivens was to look at individual federal drug agents and their conduct. And that's not the type of consideration that would involve looking at an agency's policies and trying to alter their policies. That seemed to be one of the animating concerns in both Abbasi and in Hernandez was, are we trying to change the overall agency policy here? Are we trying to push back against another branch of government? And individual federal drug agents and their conduct is front and center in Bivens. And what Abbasi recognizes, that's still this common and recurrent sphere of law enforcement that would not pose any of those concerns. And that should, in our view, animate both the new context consideration and show why this is not any different than Bivens and then would also relate to the special factors. Mr. Chung, was there excessive force in the Bivens case? There was, Your Honor. And the Supreme Court recognized that Webster Bivens both an unreasonable search and then an unreasonable arrest that involved unreasonable force. It said that there was unreasonable force. The setting was pretty disturbing in Bivens. The setting was, it wasn't a lobby of a hotel. It was a private residence, was it not? It wasn't a private residence, Your Honor. But to our understanding- And his family was there, not a desk clerk. That's correct, Your Honor. His family was there, but- I'm just trying to get a little context here. I mean, you've set up a certain framework and I'm just trying to see whether we really have a Bivens setting such as it is. Right, Your Honor. And I think all of those differences should be looked at. And that would be an example of a set of factual differences that don't go to some of these meaningful differences that we were just discussing. And I'm happy to explain why. Sure. The context that Webster Bivens case arose, as Your Honor said, happened in a home. There was an unreasonable search and then there was an unreasonable arrest. And in the present case, the allegations are that Mr. Snowden was in a hotel lobby trying to pay for his hotel room when Officer Henning rushed through an entrance, pushed him against the door, and then shoved him onto the ground. Officer Henning then punched Mr. Snowden several times in the face until he had two black eyes and a left eye socket fracture before ultimately arresting him. The excessive force claim that was at issue in Mr. Bivens case and in Mr. Snowden's case is present without regard to whether it happens in the home or in a hotel lobby. In both cases, a person is free from excessive force used against them. And we think that that persists regardless of whether you are in public or in a home. That's a type of difference that is factual, but we don't think it's meaningful because it doesn't relate to the constitutional violation at issue. In both cases, that's serious misconduct that Bivens recognized there is a remedy for, and that's why we think this case falls squarely within Bivens itself. Well, how do we distinguish this case from the excessive force that occurs on the street regularly by a rogue police officer? We think that those excessive force considerations could go, for instance, to the merits of the actual case. It could also go to the question of qualified immunity if Officer Henning were to present that. That's not currently before this court. And at that point, the relevant consideration there could be, where is this occurring? Is there a potential risk to public safety? Does the person pose a danger to other bystanders walking in the street? And that's what Graham versus Connor and the Supreme Court has made clear is the type of excessive force inquiry that has to happen to ultimately recover for damages. But as far as whether Mr. Bivens has a cause of action, that's an antecedent question that asks whether there are meaningful differences from Bivens. And we think for those purposes, the excessive force claim in Bivens and excessive force claim in our case is on all fours with each other. There's a lot of debate in this case about the presence of a warrant and whether that's a meaningful distinction here, especially in light of the language in Abbasi listing the factors that might make a meaningful difference, one of them being the statutory or the legal mandate under which the officer was operating. At what level of generality do you read that particular factor? We understand the legal mandate here to be the authority to conduct an arrest in this area of law enforcement being narcotics, which was consistent with Bivens in this case. A warrant for the same reason that the home and hotel lobby distinction doesn't really work is because a warrant doesn't ultimately go to whether excessive force was used or not. And in a decision by this court in Claret versus Roberts, it was recognized that an excessive force claim doesn't turn on whether there is a warrant or not. A warrant is simply irrelevant to the excessive force claim. So any sworn federal law enforcement officer with arrest authority is in. That's not a new context. That's the legal mandate. And, Your Honor, there could be other circumstances. For instance, the Sixth Circuit considered U.S. Marshals. In the Ninth Circuit, they considered a Border Patrol agent and they recognized there it was an exceedingly modest extension of Bivens because there was a different officer involved. And in this case, we don't need to address those other possibilities because it is a federal drug agent and that's consistent with what Bivens recognized. And just to return to the point about the warrant, it's not just the court here recognizing that a warrant would be irrelevant to excessive force claim. That's also been recognized by the Supreme Court and Grove v. Ramirez in an unreasonable search context. And searches are somewhere we might think a warrant could have more force because there are some questions about what's a reasonable search or not reasonable search where a warrant can help us determine that. But even in that context, the Supreme Court said a warrant is not the relevant issue there. In either case, that's still a Bivens context. And that's what the Ninth Circuit has then applied in a valid warrant case where there was a valid warrant for a search. But even then, the court recognized that Bivens would still apply in that context. And there's language out of the Fifth Circuit in Evans v. Davis that also is consistent with that. And the Ninth Circuit case is Ione v. Hodges if I didn't mention that earlier. Mr. Chung, do you think Bivens is limited to drug agents? We don't think Your Honor has to decide that question. The Sixth Circuit has held that it applies to U.S. Marshals just as much as it does to federal drug agents. At least in this case, this case falls under Bivens itself. And we don't think that Your Honor would have to address those other types of officers to decide this case. I see my time is running into the rebuttal time. If I could reserve that. That's fine. Unless the court has questions now. Thank you very much. You never got to step two. We'll do that on rebuttal. All right. Ms. Garrison. Thank you. Good morning, Your Honors. May it please the court. It is a pleasure to be here in person representing Agent Jeremy Henning. And I want to start out by reminding the court that in this case, Judge Gilbert dismissed the complaint on 12b6 review. So the allegations of the pro se plaintiff, Mr. Snowden, are simply accepted as true. Certainly, there's been no finding in this case that there was a broken eye socket or as to the number of punches, etc. It, of course, is the position of Agent Henning that Judge Gilbert correctly dismissed the complaint in this case after doing, Chief Judge Sykes, what you said is incumbent upon the court, and that's struggling in the aftermath of Abbasi when the handwritten pro se complaint shows up on screening. How do you parse that out and decide whether or not there is a Bivens claim? And in this case, the district court did not seriously examine the availability of Bivens until such time as Agent Henning raised the issue in a motion to dismiss. And I think, Judge Flom, when you talked about context and Bivens being a disturbing scenario, I think that's really the key to this case. In Bivens, 1971, 50 years ago, I can't help thinking of Clint Eastwood playing Dirty Harry when I think back to 1971 and Walter Bivens and what happened to him. His home was searched without warrant by six agents. That sounds like home invasion. That sounds like mob action. That's the relevance of the number of agents in that scenario. Before you go too deeply into factual questions, there is a predicate methodological question about whether this is really a factual inquiry or strictly a factual inquiry or more of a categorical inquiry. It seems to me to be something of a mix of law and fact. I think it is a mix of law and fact. And it's categorical in the sense that in Bivens, there was neither a search warrant nor an arrest warrant. And that makes it categorical. Why is the presence of a warrant important? Because with the arrest and search without a warrant in Bivens, Your Honor, no amount of force was lawful. None. That's a bright line rule in Bivens. Those officers were not authorized to use any force because there was no probable cause to arrest Webster Bivens in the first instance. In this case, Agent Henning is the case agent, a DEA case agent who investigated Mr. Snowden for narcotics offenses. He obtained an arrest warrant. There is a grand jury indictment. A grand jury found probable cause to believe that Mr. Snowden committed a narcotics offense whereupon the judge issued an arrest warrant. The presence of a warrant is just one element of reasonableness under the Fourth Amendment. And the Court's analysis in Bivens didn't distinguish between the nature of the Fourth Amendment violations that were alleged in that case. The Court was sitting as a common law court, essentially, and that's the whole problem here, is that the Supreme Court has retrenched from the view that prevailed at the time of Bivens, which was that the federal courts can act as common law courts and create remedies where they don't otherwise exist in positive law, right? That's the theoretical debate that's going on here. When courts sit as common law courts and address whether a cause of action, a new cause of action, or a new remedy should be recognized, they do it based on policy reasons. And that's essentially what was going on in the Bivens case. So to parse all these fine distinctions about the egregiousness of the facts in Bivens as compared to the facts that are alleged here, it seems to me to miss the point. Well, Judge Gilbert talked as well about the nature of the rights. We're here at de novo review, so just talk to us about how we should analyze this question. Well, Bivens, primarily a case about the right of privacy. Invasion of the home, which is something as Judge Flom has noted, is not present in this case. We did have an arrest here in a public place. Well, there was a seizure. The seizure, it wasn't just a search. That's the privacy interest. There was a pretty egregious seizure in that case, and there's an egregious seizure alleged here. It's a matter of degree. The level of humiliation and injury inflicted is a matter of degree, but that's not usually what counts when common law courts are creating new remedies or extending existing remedies to a new fact pattern. Well, it's usually either categorically in or categorically out. Abbasi certainly directed that if a case is meaningfully different than Bivens, then one must proceed to the next step and think about whether there is cause for hesitation. Right, and that's all the common law policy inquiry that I'm referring to, and it's informed by separation of powers principles. We know that if we get to step two in the analysis. And again, this is, I guess, a line of questions that demonstrates the tension that is created by Abbasi and Hernandez and the apparent fact-bound inquiry that we're supposed to be engaging in and the split among the circuits about how that's to be performed and what makes a factual difference meaningful for purposes of declaring a claim either in Bivens or out. Well, certainly, Abbasi does counsel one cannot look as broadly as the Fourth Amendment, and one, judging by Mesa, cannot look even as broadly as excessive force. And I think that certainly if you look at Malesko and Minnici v. Pollard, those inquiries were very fact-bound by the Supreme Court, and there were also some policy issues wound in. And certainly, there were findings in Minnici and in Malesko that there were alternate remedies. And of course, those were present in this case as well. The alternate remedy was laid out for the pro se plaintiff in this case. Judge Gilbert found that there was stated a common law cause of action for battery, which was the adequate remedy in Minnici. And the United States content that Agent Henning acted lawfully and that this was a reasonable use of force, filed a scope of employment certification and indicated that this should be a federal tort claim against the United States. Yeah, could I just explore that for a second, Ms. Garrison? Abbasi says that the purpose of Bivens is to deter the officer. The Federal Tort Claims Act is questionable in the sense it's not the classic remedy to deter the officer. It covers what it covers. So what are we to make of that as far as an alternative remedy? I mean, that's where I'm... With the Supreme Court and Abbasi saying what I just suggested, that it's to deter the officer, it seems to me the Federal Tort Claims Act doesn't quite accomplish the same. Deterrence effect, or would you disagree? Well, Bivens is a case about deterring the officer in a case where the violations were so extraordinarily flagrant. But as you've noted, Judge Fahm, this case is like any other case where an agent is arresting someone on the street pursuant to warrant. They are authorized to use force. That is lawful. The question is the degree. So we go from Bivens being a clear case. There is excessive force in Bivens period of the end. There's no probable cause to arrest. In Agent Henning's case, there is authorization to arrest. Where we next go is to the hair splitting and the freeze framing, second by second by second. Was the amount of force you used reasonable? Was the criminal defendant continuing to resist? Force is not reasonable in the context of an arrest when there's no resistance. It was alleged- I think you're just wrong about this premise. It was alleged that there was no resistance and that is taken as true. Right, but the distinction you're drawing here really is, the premise of it is incorrect. An officer is not entitled to use force unless there's resistance. Anytime an officer is accused of- It doesn't have to do with whether there's a warrant and probable cause or not. And there are lots of warrantless arrests that are supported by probable cause. So the distinction you're drawing seems to me to be not meaningful and in fact, resting on a flawed legal premise. Well, Your Honor, it's still meaningfully distinguishable from Bivens in that Bivens coupled two very different types of constitutional violations, both of which were egregious. And there is just no unlawful search of a residence in this case and that's very meaningful. But there is an excessive use of force alleged just as there was in Bivens. And in that sense, it's on all fours with Bivens. As there was an excessive force allegation in Mesa as well and that case was distinguishable. Right, the context was distinguishable because it implicated foreign policy. We just don't have that here. That's the type of categorical distinction that I'm referring to when I'm trying to pin down whether we're supposed to be looking at the category of the claim or sort of more rudimentary factual distinctions for lack of a better way to put it. It seems to me that some other circuits are focusing on any rudimentary factual distinction and declaring that to be an extension to a new context and drawing that line very finely. Other circuits are not. We have to figure out where we come down because this is a test case for us. And we appreciate that this court has not yet... And it may be a test case for the Supreme Court. So you all may be going to the Supreme Court depending on which way this comes out. Well, the Ninth Circuit case comes up for conference later in November about whether that will go to the court as well. And it is a blessing that for... But that's a cross-border case. That is a cross-border case. But... That's like Henderson. I'm sorry, Hernandez. Well, certainly reasonable minds can and are disagreeing about the degree to which these distinctions should be drawn. And with Bivens, I mean, Abbas even notes that Bivens primarily involved a right of privacy. And that right of privacy is just not present in this particular case. And we see that as the meaningful difference. Well, again, there was a seizure in that case. And that's a different interest that's implicated under the Fourth Amendment, protected by the Fourth Amendment. As is the sanctity of the home. Correct. But that's not all that that case was about. That is true. This is a subset of a pattern and a series of constitutional violations at issue in the Bivens case. Ms. Garrison, before we run out of time, what would a claimant's alternative remedy be for a constitutional violation here for a case against a federal officer for a violation of a Fourth Amendment, an excessive force? And if the answer is not, as Judge Flom has alluded, the FTCA, what would the claimant's alternative remedy be? As Judge Gilbert recognized in this case, a state law battery claim. And Abbasi tells us as well that there has to be an adequate remedy. It need not be a remedy that addresses the constitutional violation. It can still be an adequate remedy without directly, squarely addressing the constitutional issue. All right. Thank you very much. Thank you so much, Your Honors. Mr. Chung. Your Honors, I would like to just make two quick points before turning to these alternative or purported alternative remedies. One is that this is not, in our mind, an edge case. It is on all fours with Bivens. And we can see that there are possible other cases where other legal mandates could be at issue. For instance, the Fourth Circuit looked at a case, Toon Cost v. Perotti, that involved individual line-level officers, but they were focused on enforcing immigration law, for instance, as opposed to enforcing narcotics law. As far as excessive force claims go, the Sixth and Ninth Circuits have both held that this type of case falls squarely within Bivens. And the only other case that's been referenced is Oliva, which has a Fifth Circuit case that some considered or thought that it was a split, but we think that case can be harmonized as well. In that case, there's, again, a different type of legal mandate. It's a mandate about protecting a government building, which is very different than trying to enforce narcotics law. Just in the little time I have left, I'd like to focus on the FTCA was mentioned, state tort law was mentioned. The FTCA is not an alternative remedy. In Carlson v. Green, the Supreme Court recognized that. Since then, Congress has amended the FTCA twice, extending liability to government officers. And then also, it excluded from that remedy being exclusive constitutional violations like the one at issue here. So we think the congressional action actually supports Congress recognizing, at least maintaining, the current status of Bivens. As far as state tort law remedies go, there are no claims that can be brought against the individual officer himself. Those would be brought against the U.S. government. The U.S. government would try to substitute themselves as they tried to do in this case. That's why we don't think state tort law would provide a remedy either. And I see that my time has elapsed. So unless the court has any further questions, we ask that the district court, we ask that this court reverse the decision of the district court and allow this case to proceed. All right, thank you very much. Thank you. Our thanks to both counsel. The case is taken under advisement.